JAMES MITCHELL, Appellant, v. PLA-MOR, INC., a Corporation, Respondent, No. 41968—237 S. W. (2d) 189.

Division One, March 12, 1951.

*Ted Houx, Jr.,* and *Chas. Westmoreland* for appellant.

*Paul C. Sprinkle, William F. Knowles, Roy F. Carter* and *Sprinkle, Knowles & Carter* for respondent.

[189] ASCHEMEYER, C.—This is an action, in two counts, to recover damages for two assaults alleged to have been committed upon plaintiff (appellant) by employees of defendant (respondent). Appellant's petition prayed for actual damages of $5,000.00 and punitive damages in the same amount upon each [190] count or a total of $20,000.00. The jury returned a verdict for $2500.00 actual damages and $2500.00 punitive damages upon each count or a total verdict of $10,000.00. The trial court granted a new trial "because the verdict of the jury is so grossly excessive that it shocks the conscience of the court, and was the result of passion and prejudice on the part of the jury." The appeal has been taken from this order of the trial court.

The sole question presented for decision is whether the trial court acted in the proper exercise of discretion in granting a new trial for the reasons stated in the order sustaining a motion for a new trial.

A summary statement of the facts will suffice. The incidents involved in this case occurred in the early morning of March 22, 1947, at a public ballroom or dance hall operated by respondent in Kansas City, Missouri. Appellant was 23 years of age and unmarried. On the evening of March 21, 1947, he attended a dance given on respondent's premises after paying the required admission charge. He frequently attended dances at respondent's ballroom and was acquainted with some of the employees who worked there and with some of the patrons. During the course of the evening he bought a carton of chewing gum from one of the attendants on the premises. This particular brand of gum was then hard to obtain, and he bought it as a favor for a friend. He decided to check the gum at the checkroom adjacent to the dance hall. He paid a fee for this privilege and was given an identification check. Some of the girls who worked in the checkroom laughingly remarked that they would have gum to chew, and he asked them not to take any. During the course of the evening he danced and drank two or three bottles of beer. He drank nothing else.

When the dance was over, he went to the checkroom to claim his carton of gum. Less than half the amount of gum he had checked was returned to him. The checkroom girls were chewing gum and

laughing. He was "a little peeved about it." He told them he would like to have his gum and was going to get it before he left. He argued with the girls but did not use any "foul language." A floorman with whom he was acquainted intervened and advised him to "forget it." He started to leave when another floorman appeared and said, "If he don't shut up, let's throw him out."

The two floormen took hold of his arms and started to walk him down the stairs from the second floor where the ballroom was located. When they got to a landing halfway down, two other employees of respondent (Todd and French) met them and "grabbed ahold" of him. They started pulling him out and "pushing and everything else." He tried to get away but did not strike anyone or "curse." When they got him to the door in the ground-floor lobby, the first two floormen turned him loose. Todd twisted his arms behind him while French hit him on the side of the head several times with his fist. Two teeth were broken. He spit out fragments of his teeth and showed them to Todd and French. He then crossed the street to a restaurant.

He decided to return to respondent's premises to see the manager. He did return and thereupon another assault and battery occurred, according to appellant, which is the subject matter of the second count of the petition. Upon his return he walked up the stairs to the landing and knocked on the door of the manager's office. Todd then appeared and, with some help from French, ejected him again. Todd twisted his arms behind him and was "booting" and kicking him "all the time down the steps and out the door." Todd took him out of the door and started beating his head against the side of the building. Todd struck him in the eye and made it black; tore off his shirt; and had him down on the sidewalk on one knee. Some other employee of respondent then jerked Todd off of him. He got up and was groggy. He crossed the street to a restaurant, drank some coffee and then went home.

As a result of the first assault, enamel was cracked and broken on two of appellant's [191] teeth. They were crowned by a dentist at an expense of $20.00. As a result of the second assault, his clothes were torn; his face was cut and bruised; and he suffered headaches. He still suffered with headaches occasionally at the time of the trial. He lost no time from his employment and had received a promotion since the occurrence. Other people were present when he was assaulted and he was embarrassed and humiliated.

Some ten employees of respondent testified in its behalf. Without attempting to state in detail the testimony of each witness, it is accurate to say that respondent's evidence contradicted the testimony of appellant in various respects. Several checkroom employees stated that when appellant checked his carton of gum, he invited them to take some. When he called for his gum after the dance was over,

he had no check. At first the checkroom employees refused to deliver his parcel unless he could surrender his check. Appellant got loud and began to argue. Finally, they gave the gum to him, and he then objected to the shortage. He was loud and profane. It was closing time. He was asked to leave and present his protest later. He refused to leave. Thereupon two employees undertook to take him out. Appellant cursed, struggled and tried to hit them. When they got to the landing on the stairway, Todd took over and escorted appellant out of the door. Appellant continued to struggle and threw Todd against a handrail on the stairs, breaking it. No one struck appellant and when he got out on the sidewalk he left.

Some time later Todd saw him return. Appellant went to the door of the manager's office and began to pound on it. Todd told him the manager was out of the city and he would have to return later to see him. Appellant got loud, cursed and an argument ensued. When he refused to leave, Todd escorted him to the sidewalk. Appellant hit Todd in the face, and Todd retaliated with a blow to the mouth which knocked appellant down. The employee in charge of the floormen then intervened, separated appellant and Todd, and appellant left.

■ Appellant argues that the separate verdicts, each for $2500.00 actual and $2500.00 punitive damages, were not excessive upon the facts in evidence. He points out that his actual damages were not limited to the physical injuries he suffered but that he is entitled to recover substantial damages for the humiliation, shame and mental anguish he suffered. These are elements of actual damages which cannot be measured precisely. Johnson v. Daily, 136 Mo. App. 534, 118 S. W. 530; Stewart v. Watson, 133 Mo. App. 44, 112 S. W. 762; Seested v. Post Printing & Publishing Co., 326 Mo. 559, 31 S. W. 2d 1045. It is also true, as appellant points out, that "* * * 'the giving or withholding of punitive damages, as well as the amount thereof, lies wholly within the discretion of the jury.' Grier v. Railway Co., 286 Mo. 532, 542, 228 S. W. 454, 460. Unless therefore it plainly appears that there has been an abuse of such discretion, a court is not justified in interfering with an assessment of punitive damages * * *." See also Menke v. Rovin, 352 Mo. 826, 180 S. W. 2d 24.

■ The argument advanced by appellant might be persuasive if the trial court had overruled respondent's motion for a new trial and we were asked, on appeal, to consider the question of excessiveness of a verdict of $10,000.00 in appellant's favor. In such a case, we would be powerless to weigh the evidence and would consider only the evidence favorable to the present appellant on the issue of his damages. Sofian v. Douglas, 324 Mo. 258, 23 S. W. 2d 126, 129; Hilton v. Thompson, 360 Mo. 177, 227 S. W. 2d 675, 684. The trial court is not so limited in ruling a motion for a new trial. The action

of a trial court in sustaining a motion for a new trial, either on the ground of excessiveness or inadequacy of the verdict, is an exercise of the court's power to weigh the evidence. Sofian v. Douglas, supra; Murphy v. Kroger Grocery & Baking Co., 350 Mo. 1186, 171 S. W. 2d 610, 611; Lang v. St. Louis Public Service Co. (Mo. App.), 204 S. W. 2d 504, 506.

[192] In weighing and considering all of the evidence in the case relevant to the issue of appellant's damages, the trial court, in the exercise of its discretion, may conclude that the evidence of respondent outweighed that of appellant in certain respects. For example, the trial court may have concluded that appellant had used loud, abusive and profane language at the time both alleged assaults were committed. Appellant recognized, by an instruction given at his request, that such conduct may be considered "as reducing exemplary or punitive damages, if any be awarded." We could not say that the trial court was guilty of an abuse of discretion in concluding that the jury had failed to consider, in mitigation of punitive damages, the provocative conduct of appellant which the court considered to have been established by the weight of the evidence. In considering the propriety of the trial court's ruling on the motion, we must view the evidence in the light most favorable to respondent which was the prevailing party on the motion for a new trial. Murphy v. Kroger Grocery & Baking Co., supra.

The trial court also granted a new trial on the ground that the verdict was the result of passion and prejudice on the part of the jury. Appellant argues that there is nothing in the transcript of the record to justify this action and that mere excessiveness of a verdict will not justify the conclusion that a verdict resulted from passion and prejudice. We have said that upon appellate review of a judgment "an excessive verdict in and of itself does not establish that the verdict was the result of passion and prejudice." O'Brien v. Louisville & Nashville R. Co., 360 Mo. 229, 227 S. W. 2d 690, 693. This rule does not apply to a trial court which "may infer bias and prejudice from the size of a verdict alone." Bailey v. Interstate Airmotive, 358 Mo. 1121, 219 S. W. 2d 333, 340; Jones v. Pennsylvania R. Co., 353 Mo. 163, 182 S. W. 2d 157; Sofian v. Douglas, supra; Aeolian Co. of Missouri v. Boyd (Mo. App.), 138 S. W. 2d 692. We recognize also that the trial court's conclusion that the verdict is the result of passion and prejudice may be based upon matters which occurred at the trial but which cannot be preserved in the record. "A trial court, however, is in a position to find from all the circumstances of the trial that bias or prejudice entered into the case. Many matters that do not appear of record may be observed by the trial court." Dye v. St. Louis-San Francisco Ry. Co., 361 Mo. 331, 234 S. W. 2d 532, 535; Jones v. Pennsylvania R. Co., supra; Bailey v. Interstate Airmotive, supra.

■ A trial court is allowed a wide discretion in granting a motion for a new trial. This is particularly so where the trial court has ruled the motion upon the weight of the evidence or upon trial circumstances which are peculiarly within the knowledge of the trial court and which have convinced the trial court that the verdict is the result of passion and prejudice. Moss v. May Department Stores Co. (Mo. App.), 31 S. W. 2d 566, 567; Reichmuth v. Adler, 348 Mo. 812, 155 S. W. 2d 181, 182; De Maire v. Thompson, 359 Mo. 457, 222 S. W. 2d 93, 97.

Upon the record before us, we cannot say that the trial court abused its discretion in granting a new trial. Dye v. St. Louis-San Francisco Ry. Co., supra.

The order granting a new trial is hereby affirmed. *Van Osdol* and *Lozier, CC.,* concur.

PER CURIAM:—The foregoing opinion by ASCHEMEYER, C., is adopted as the opinion of the court. All the judges concur.